SUGARMAN et al. v. FRASER et al.

(Supreme Court, Appellate Term. April 8, 1911.)

1. BROKERS (§ 9*)—EMPLOYMENT—TIME FOR PERFORMANCE.

Where a contract employing a broker to procure a mortgage loan fixed no time for performance, the broker had a reasonable time within which to perform.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 10; Dec. Dig. § 9.*]

2. BROKERS (§ 63*)—EMPLOYMENT—TIME FOR PERFORMANCE.

A contract employing a broker to procure a mortgage loan did not fix the time for performance. The broker procured a lender ready and able to furnish the money but be objected to the title. Negotiations to cure defects in the title were carried on for about a month when the objections to the title were withdrawn and the time fixed for closing the transaction. The borrower failed to appear, and several days later stated that he did not want the money. Held, that the broker had earned his commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79–96; Dec. Dig. § 63.*]

Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Harry Sugarman and another against Catherine B. Fraser and another. From a judgment of the Municipal Court for plaintiffs, defendants appeal. Affirmed.

Argued before HENDRICK, LEHMAN, and DELANY, JJ.

Isidore Oshlag, for appellants.

Miller & Bretzfelder (Charles S. Sinsheimer, of counsel), for respondents.

DELANY, J. The plaintiffs seek to recover the amount of their commissions and expenses incidental to the procuring of two mortgage

loans on the property of the defendant Catherine Fraser, who in all the transactions was represented by Andrew S. Fraser, her agent. The agreement was in writing and as follows:

"New York April 12th, 1910.

"In consideration of one dollar to me in hand paid by Messrs. Sugarman and Kahn of No. 302 Broadway, Manhattan, New York City, I hereby agree to accept the loan of a first mortgage of five thousand dollars ($5000) at 5% for three years on my property at northwest corner of 71st street and 14th avenue, one hundred feet by one hundred feet (100x100); also a second mortgage for $1250 for 18 months at 6% payable in installments of $500 at the end of six months from date of closing, and the balance in equal quarterly payments, and I agree to pay said Sugarman & Kahn the sum of $475 to cover all recording fees, commissions and disbursements, etc., of every nature for placing said two mortgages. This authorization to be void unless both mortgages are placed and accepted at one time, and the acceptance must be in my hands within ―――― days.

"It is agreed that the first mortgagee is to withhold $250 of the principal until the house on the premises is painted and put in good condition; and when this is done the $250 is to be paid to the owner upon demand.

"Dated New York, April 12th, 1910.

"Catherine B. Fraser,
"By Andrew S. Fraser.
"Andrew S. Fraser."

The plaintiffs secured acceptances of the mortgage loans and the Lawyers' Title Company proceeded with the investigation of the title. The time for closing the transaction was set for April 26th, but for the convenience of the defendants postponed to April 29th. It then transpired that an objection was raised to the title; and, with a view to obviating this difficulty and permitting the transaction to be closed; the defendants' attorneys considered the question of law alleged to be involved, and, while not conceding the tenability of the objection, endeavored to procure information and affidavits which would have undoubtedly removed all ground for contention. The importance of the time of obtaining the money was first mooted on May 3d, when defendants' attorneys write, "Our clients insist on closing the matter at once," but we find them on the 5th still engaged in helping to solve the difficulty, and saying, "Without prejudice we are trying to locate Mr. Mecke (whose written statement was required to satisfy the examiner of the title) and we will have some information to-morrow." About this time a suggestion was made that, as the Title Guarantee Company had previously passed the same title, a letter of indemnity from the company would preclude further delay. It was ascertained that this could be obtained provided a fee for the same were paid, and defendants intimate that plaintiffs should pay the fee, stating in their letter of May 5th, "You ought to be able to do this out of the $475, more or less, that is coming to you." Plaintiffs, however, on the following day declined and properly to bear that expense. Clearly the contention raised alone prevented the completion of the business up to this point. The closing thereafter seemed to be in abeyance for a few days, when the objection to the title was withdrawn, and on May 12th plaintiffs fixed the next day for closing, but the defendants did not appear at the appointed time and place, and several days thereafter said that they did not want the money.

[1] In the contract no time was fixed for the performance, and a reasonable time was therefore implied within which plaintiffs should have performed their part. [2] The evidence in the case shows that they had lenders ready and able to furnish the money. The only testimony which bears on the time of performance is contained in the line of February 3d, "Our clients insist upon closing the matter at once." No demand was made for a fixed time, then or thereafter. We do not pass upon the sufficiency of the objection raised. It is well known that delays are usual in such transactions because of objections to title sometimes tenable and sometimes untenable, and, if such negotiations are unnecessarily protracted and the borrower wishes to stand on the soundness of his title, he may demand performance within a fixed but reasonable time.

Time here was not of the essence of the contract and the case discloses no unreasonable delay, the deterring negotiations seeming to have been conducted by acquiesence of both parties. Under the circumstances, we believe that there was ample evidence to sustain the judgment of the court below.

Judgment affirmed, with costs.

HENDRICK, J., concurs.

LEHMAN, J. (dissenting). The defendants authorized the plaintiffs to obtain a first-mortgage loan for $5,000 and a second-mortgage loan for $1,250 upon premises owned by the defendant Catherine Fraser, and agreed to pay them a commission of $475 for their services. The plaintiffs procured written acceptances of the loan. The larger loan was taken by the Lawyers' Title Insurance & Trust Company, and it was arranged that the loan should close on April 26th, subsequently adjourned till April 29th. When the original date for closing was fixed, the plaintiffs testified: "Mr. Fraser wanted it to close as soon as possible." Before April 29th the Lawyers' Title Company raised an objection to the title which had previously been guaranteed by the Title Guarantee & Trust Company, and a suggestion was made that the latter company having already guaranteed the title should give the former company a letter of indemnity. Some negotiations with the Title Guarantee & Trust Company followed. They took the position that the title guaranteed by them was good, but they would not give the Lawyers' Title Insurance Company a letter of indemnity without payment. The defendants on May 5th wrote the plaintiffs, stating their position, and suggesting that they pay such charges out of their commission, but the plaintiffs refused this suggestion, and no fault can be found with them for their refusal. No further communications passed between the parties until May 12th, when the plaintiffs informed the defendants that the Lawyers' Title Insurance Company would close the loan on May 13th. On that date the company was ready, able, and willing to close the loan, but the defendants refused "as they had no further use for the money."

Upon these facts the trial justice gave judgment for the plaintiffs. The justice stated his position plainly, saying:

"I don't think it is necessary to cross-examine him any more. I just want to give my opinion of this case as it stands now and hear the argument of counsel. I don't think we need any more testimony. Right now it looks to me as though the Frasers had authorized the plaintiffs to procure the loan. The plaintiffs went ahead, got the parties ready, willing, and able to furnish the money; that there was a defect in the title, which, of course, was no fault of Sugarman; and that the loan was put through as soon as the defect was cleared up. Therefore they have done all that they agreed to do, and that, while it might not have been consummated finally, they have earned their commission and they are entitled to it."

Of course, if by defect in the title the trial justice meant a defect making the title unmarketable, his view is not supported by the evidence. The testimony shows only a claim of defect raised by one title company and denied by another and apparently subsequently abandoned by the first company. At most, this testimony would therefore show a colorable claim of defect. Under such circumstances, while the plaintiffs might be entitled to commissions earned by obtaining a purchaser, they are not entitled to commissions for obtaining a loan. The distinction between the cases has been pointed out frequently by various appellate courts; the last opinion being the opinion of this court written by myself in Steele v. Lippman (Sup.) 115 N. Y. Supp. 1099:

"A broker has not performed his whole contract when he has secured an offer to loan upon the terms set forth by the borrower, but must *actually secure a mortgage loan* unless the loan fails through the fault of the borrower."

See, also, Crasto v. White, 52 Hun, 473, 5 N. Y. Supp. 718; Ashfield v. Case, 93 App. Div. 452, 87 N. Y. Supp. 649; Duckworth v. Rogers, 109 App. Div. 168, 95 N. Y. Supp. 1089.

There is no proof that the loan failed through the fault of the borrower. There is no evidence that the defendants' title was defective on April 29th. It is undisputed that when they accepted the offer to loan and fixed the time for closing they stated that they wanted to close as soon as possible. A letter from them dated May 3d states that they "take the position along with the Title Guarantee & Trust Company that the title is absolutely all right. At your request we will take the matter up with the Lawyers' Title Company and see if they can be satisfied upon the proposition. If they have any law upon it it will do them no harm to show it. We will let you know to-morrow, but our client insists *upon closing the matter at once.*"

There is no dispute that after May 5th no suggestion was made that the matter was kept open, and I can therefore not find that their refusal to proceed on May 12th after they had made other arrangements was unreasonable. The loan therefore failed of consummation without fault of the defendants, and the plaintiffs are not entitled to compensation, even though the failure was not due to their fault.

The judgment should be reversed and a new trial granted, with costs to appellants to abide the event.